David A. GAMBLE, Plaintiff–Appellant,

v.

Shirley S. CHATER, Commissioner of the Social Security Administration,* Defendant–Appellee.

No. 94–35186.

United States Court of Appeals, Ninth Circuit.

Argued as to Appellant
Submitted on the Briefs as to Appellee
Sept. 12, 1995.

Decided Oct. 12, 1995.

James S. Coon, Royce, Swanson, Thomas & Coon, Portland, Oregon, for plaintiff-appellant.

Richard H. Wetmore, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for defendant-appellee.

Before: SCHROEDER, REINHARDT, and FERNANDEZ, Circuit Judges.

REINHARDT, Circuit Judge:

This case provides an example of how arbitrary and unreasonable interpretations of our disability benefits laws deprive individuals of

---

* Pursuant to P.L. No. 103–296, the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of the Social Security Administration, effective March 31, 1995. In accordance with section 106(d) of the Act, Shirley S. Chater, the Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant. Although the Secretary of Health and Human Services was responsible for the actions of the Social Security Administration at the time of its final decision in this case, we refer to the defendant as "the Commissioner" throughout this opinion for the sake of convenience.

much needed financial aid and frustrate the underlying statutory purposes.

## BACKGROUND

The facts are not in dispute. David Gamble injured both lower legs in a childhood farming accident. As the result of increasing deformity and pain during adulthood, his right leg was amputated below the knee in July 1988. After the amputation, doctors expected that shrinkage of the stump would occur for the next two years, possibly requiring changes to his prosthesis.

In late 1989, the skin on Mr. Gamble's stump began to break down. By May 1991, at least one doctor had concluded that his prosthesis would have to be replaced. This condition worsened over time, causing increased pain. An October 1991 examination revealed "multiple boil-type pressure sores on weight bearing areas and a large purple crusty area with sharp lines of demarcation on the anterior distal portion of his shin." It was determined that the current prosthesis no longer fit and could not satisfactorily be adjusted. Because Mr. Gamble had no way of obtaining the $3,477.80 needed for a replacement prosthesis, his treating doctor concluded that "there is little more we can do" and limited him to "crutch walking."

Mr. Gamble applied for Supplemental Security Income benefits in April 1991 and for Social Security Disability Insurance benefits in May 1991. After an administrative hearing, his claim was denied. The Commissioner determined that Mr. Gamble's condition did not meet or equal the listing for "Inability to use a prosthesis effectively," contained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.10 ("Listing § 1.10"), and that he was able to work. According to the Administrative Law Judge's written decision: "The fact that the claimant does not have the $3,000 plus dollars to get a new prosthesis does not make him 'meet' this listing." The district court upheld the Commissioner's decision.

## DISCUSSION

The sole issue on appeal is whether the Commissioner erred as a matter of law in concluding that Mr. Gamble's condition did not meet or equal Listing § 1.10. Listed impairments are considered so severe that they are irrebuttably presumed to be disabling, regardless of vocational factors. 20 C.F.R. §§ 404.1520(d) & 416.920(d); *see also Marcia v. Sullivan,* 900 F.2d 172, 175–76 (9th Cir.1990).

The listing for leg amputation provides, in pertinent part:

1.10 *Amputation of one lower extremity (at or above the tarsal region):*

. . . . .

C. Inability to use a prosthesis effectively, without obligatory assistive devices, due to one of the following:

. . . . .

3. Stump too short or stump complications persistent, or are expected to persist, for at least 12 months from onset; ....

There is no question that Mr. Gamble's right leg was amputated above the tarsal region, that the prosthesis he has causes stump complications, that he cannot afford a workable replacement, and that he must use crutches as a result. The Commissioner, however, points out that "not all prostheses would cause complications." Under the Commissioner's interpretation of § 1.10, unless the claimant can demonstrate that there exists no prosthesis that would properly fit his stump and enable him to walk without an assistive device, he cannot satisfy the listing. According to the Commissioner, if such a prosthesis exists somewhere, it is irrelevant that the claimant is unable to acquire it. Mr. Gamble does not deny that a prosthesis exists that would remedy his problem; he simply argues that a claimant meets the listing if he is unable to obtain a medically suitable prosthesis because he cannot afford to do so.

The proper interpretation of Listing § 1.10 is an issue of first impression in this circuit. While no other circuits have addressed the precise question presented here, several have considered whether disabled claimants may be denied benefits if their condition is remediable but they cannot afford the necessary medical treatment. All have concluded that the Commissioner may *not* deny benefits in those circumstances. *Dawkins v. Bowen,*

848 F.2d 1211, 1213 (11th Cir.1988) (while remediable conditions are not generally disabling, that condition is disabling if claimant cannot afford prescribed treatment); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987) ("the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered."); *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery justifies failure to undergo); *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."); *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir.1984) (Secretary should consider lack of resources in determining whether condition is remediable); *see also* Social Security Ruling 82–59 (a person who otherwise meets the disability criteria may not be denied benefits for failing to obtain treatment that he cannot afford).[1]

■ We certainly agree with all the other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment. As the Commissioner points out, however, there is one difference in this case. The other circuits have addressed the application of 20 C.F.R. §§ 404.1530 and 416.930, which permit the Commissioner to deny benefits where the claimant meets the disability criteria but fails to obtain treatment that would ameliorate his condition. Under those regulations, the inability to afford treatment is among the circumstances that justify the failure to obtain it. *See* Social Security Ruling 82–59. Thus, a claimant who meets the disability criteria may not be denied benefits if he is unable to afford the treatment that would help him.

In each of the cases cited above, the claimant's condition—without treatment—satisfied the disability criteria. The question presented was whether benefits could nevertheless be denied under 20 C.F.R. § 404.1530 or § 416.930 due to the claimant's failure to obtain treatment. In other words, the question was whether the claimant had failed to comply with a condition *subsequent* to the determination that the disability criteria were satisfied.

The regulation before us, however, appears to involve a condition *precedent* to satisfaction of the disability criteria. Mr. Gamble was not found to have met the disability criteria and then denied benefits because he failed to follow prescribed treatment as required by 20 C.F.R. §§ 404.1530 and 416.930. Rather, the dispute here involves the question of whether Mr. Gamble satisfies the relevant disability criteria in the first place. Specifically, the question is whether Mr. Gamble meets Listing § 1.10 in light of its requirement that in order to be classified as disabled he must be unable to use a prosthesis effectively.

Although we recognize that the regulation at issue here is not identical to the one that the other circuits have interpreted, and although the regulation before us appears to contain a condition precedent rather than a condition subsequent, the difference is completely immaterial to the question whether a claimant is entitled to benefits. The basic principle that applies in all disability cases (whether under the regulations construed in the earlier cases or under the present regulation) is exactly the same: Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *See* cases cited *supra* page 321. Adherence to this principle compels us to reject the Commissioner's interpretation of Listing § 1.10.

The Commissioner argues that a claimant does not meet the listing if there is *any* prosthesis that he could use without complications, regardless of its availability or cost. That is simply incorrect. Under the Commissioner's interpretation of the phrase "[i]nability to use a prosthesis effectively," a claimant would not qualify even if a replace-

---

1. Social Security Rulings are final opinions and statements of policy by the Commissioner of Social Security, binding on all components of the Social Security Administration. 20 C.F.R. § 422.406(b)(1). They are "to be relied upon as precedent in determining cases where the facts are basically the same." *Paulson v. Bowen*, 836 F.2d 1249, 1252 n. 2 (9th Cir.1988).

ment prosthesis cost $1 million and the claimant were a pauper. Nor would a claimant qualify if there were only ten prostheses in existence that would fit his needs, all of the devices were being used by other amputees, and there was a waiting list ten thousand persons long. The Commissioner's interpretation is not only hypertechnical, it is nonsensical; more important, it directly contravenes the primary purpose of the Social Security Act: "to give financial assistance to disabled persons because they are without the ability to sustain themselves." *See Gordon,* 725 F.2d at 237. Someone who cannot obtain a prosthesis for lack of funds is no better able to sustain himself than someone who would not be benefitted by using one.

The claimant's interpretation of the listing, on the other hand, is consistent with its obvious purposes. According to Mr. Gamble, the "[i]nability to use a prosthesis effectively" means the inability to use a prosthesis that is reasonably available to the claimant. The relevant question is not whether somewhere on the planet there exists a prosthesis that the claimant could use, if only he could afford the enormous price; rather, the question is whether the claimant, himself, can realistically obtain such a prosthesis. A claimant who cannot afford a prosthesis is, as a practical matter, unable to obtain one. There *is* no prosthesis for *him* to use effectively.[2] The Commissioner offers no legitimate reason or explanation why an amputee who is unable to obtain a prosthesis should be treated differently from any other disabled person who cannot obtain the treatment, therapy, or medical device that he needs. Instead, she rests her argument exclusively on her own contrarian construction of the language of a regulation that obviously could not contemplate such a result.

■ We therefore hold that a person whose leg was amputated at or above the tarsal region satisfies Listing § 1.10 if he is unable to use any prosthesis that is reasonably available to him. Contrary to the Commissioner's fears, adopting this construction of the listing will not "open the floodgates" to claimants who could obtain prostheses that would meet their needs, but who simply choose not to purchase them. Such claimants would not meet the listing, since a prosthesis *would* be reasonably available to them. Moreover, such claimants could still be found "not disabled" under 20 C.F.R. §§ 404.1530 and 416.930, for failing to follow prescribed treatment without good reason.

We end by reminding the Commissioner once again what the Fourth Circuit has said:

> Although progress has been made in providing affordable medical care to the needy and elderly . . ., many Americans are without the means or the opportunity to obtain necessary medical care. Social Security disability and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves. It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.

*Gordon,* 725 F.2d at 237. Bearing that lesson in mind may save the Commissioner from needless future appeals. It may also help ensure that disabled people without funds will receive the benefits to which they are entitled at the time when they are most needed.

## CONCLUSION

Mr. Gamble cannot afford a prosthesis that would ameliorate his condition. Had the proper standard been applied, the Commis-

---

**2.** We note that Mr. Gamble may be able to obtain the prosthesis he so obviously needs once he becomes eligible for disability benefits. In most states, eligibility for Supplemental Security Income benefits automatically entitles the claimant to receive health coverage under the Medicaid program. 42 U.S.C. § 1396a(a)(10)(A)(i)(II); 42 C.F.R. § 435.120; *see also Lynch v. Rank,* 747 F.2d 528, 530 & n. 1 (9th Cir.1984) (noting that states electing to participate in Medicaid program must cover the "categorically needy" and that this category includes disabled SSI recipients). Oregon is among the states which provide Medicaid to SSI recipients. Or.Rev.Stat. §§ 414.025(1) & (2)(a) and 414.032. However, we do not know whether Mr. Gamble will be able to obtain a prosthesis through Oregon's program. When asked at oral argument whether Mr. Gamble would be able to obtain a prosthesis if he were awarded benefits, his counsel was unable to provide a definitive answer.

sioner would have been compelled to find him disabled. Because there are no disputed factual issues, no purpose would be served by remanding for further proceedings. *See Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990). Accordingly, we reverse and remand with instructions that Mr. Gamble be awarded benefits.

REVERSED and REMANDED for payment of benefits.