Tawnia NIXON, Appellant,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security.

No. 03–1949.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Dec. 4, 2003.

Decided Dec. 9, 2003.

John G. Burt, Pittsburgh, PA, for Appellant.

Lori Karimoto, Social Security Administration, Philadelphia, PA, for Appellee.

Before SLOVITER, ALITO, and OBERDORFER,* Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Tawnia Nixon appeals the Commissioner's denial of her application for disability benefits. She claims that she meets the criteria for a listed disability under 20 C.F.R. 404 supt. P., app 1, or, in the alternative, that her disability leaves her unable to work at any job available in the national economy. The District Court granted summary judgment for the Commissioner. We affirm because we find that the ALJ's determinations were supported by substantial evidence. *See* 42 U.S.C. 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842

---

* Honorable Louis F. Oberdorfer, U.S. District Judge for the District of Columbia, sitting by designation.

(1971)(defining "substantial evidence.") As we write only for the parties, we will not restate the facts of the case.

Nixon's first claim is that her difficulty with her prosthesis automatically qualifies her for benefits under 20 C.F.R. subpt. P., app. 1, § 1.10C3 (the regulation in effect at the time of application). This claim is without merit. The regulations make clear that the applicant must show an "[i]nability to use a prosthesis effectively, without obligatory assistive devices." [2] According to Nixon's own testimony, she does not need any "assistive devices." *See* App. at 49. Furthermore, there is substantial evidence in the record to show that Nixon is able to use the prosthesis effectively. Various physicians found that Nixon was able to engage in standing, sitting, walking, and minor lifting. While the prosthesis does give her some difficulties, the record shows sufficient evidence that she is able to use the prosthesis effectively. *See Gagnon v. Secretary of Health and Human Services*, 666 F.2d 662, 664 (1981).

Nixon next claims that the ALJ erroneously determined that she could work at various jobs available in the economy. *See* 20 C.F.R. § 416.905 (2000). The ALJ, upon considering Nixon's various disabilities and listening to a vocational expert, determined that Nixon could work at various sedentary jobs, such as cashier and small-parts assembler. The record is full of evidence that supports the ALJ's decision. Just one example is the report of Nixon's treating physician, Dr. Marged, which found that Nixon could engage in sedentary work.

After considering all of Nixon's arguments, we affirm.

---

2. Even if we were to accept the reasoning of the Ninth Circuit's opinion in *Gamble v. Chater*, 68 F.3d 319 (9th Cir.1995), we find that the case is distinguishable because Mr. Gamble was unable to use his prosthesis effectively and was forced to use crutches as a replacement. *Gamble* held that simply because there was an unaffordable prosthesis that Mr. Gamble could use effectively, it did not mean that he was able to use his own or another reasonably available prosthesis effectively. *See Gamble* at 322 ("We therefore hold that a person whose leg was amputated at or above the tarsal region satisfies Listing § 1.10 if he is unable to use any prosthesis that is reasonably available to him.")