Jacqueline **CAMPBELL,** Plaintiff,

v.

Michael J. **ASTRUE,** Commissioner, Social Security Administration, Defendant.

Civil Action No. 3:07–cv–1551 (JCH).

United States District Court, D. Connecticut.

Jan. 23, 2009.

---

Allan B. Rubenstein, New Haven, CT, for Plaintiff.

Ann M. Nevins, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

## RULING RE: PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S RECOMMENDED RULING [Doc. No. 17] DETERMINING PENDING MOTIONS [Doc. Nos. 13, 15]

JANET C. HALL, District Judge.

## I. INTRODUCTION

Plaintiff, Jacqueline Campbell, brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), requesting review of a final decision by defendant, the Commissioner of Social Security ("Commissioner"), that Campbell was not disabled from March 1992 to June 1995, and therefore is not entitled to Social Security Disability Insurance ("SSDI") benefits. On August 22, 2008, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling, denying Campbell's Motion to Reverse the Decision of the Commissioner and granting the defendant's Motion to Affirm the

Decision of the Commissioner. Campbell now objects to the Recommended Ruling.

For the reasons stated below, the Magistrate Judge's Recommended Ruling [Doc. No. 17] is **AFFIRMED, ADOPTED, and RATIFIED,** in part. Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. No. 13] is **DENIED,** and defendant's Motion to Affirm the Decision of the Commissioner [Doc. No. 15] is **GRANTED.**

## II. STANDARD OF REVIEW

As a preliminary matter, a district court reviews, *de novo,* those portions of a magistrate judge's recommended ruling to which an objection is made. The court may adopt, reject, or modify, in whole or in part, the magistrate judge's recommended ruling. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72(b)(3).[1]

■ In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error or is unsupported by substantial evidence." *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation and citation omitted). Rather, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel,* 23 F.Supp.2d 179, 189 (D.Conn. 1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. *See Eastman v. Barnhart,* 241 F.Supp.2d 160, 168 (D.Conn.2003). In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel,* 145 F.3d 106, 111 (2d Cir.1998).

## III. BACKGROUND

### A. *Summary of Facts*

Jacqueline Campbell was born on August 11, 1960, and was thirty-four years old when she filed an application for disability insurance benefits. Certified Transcript of Administrative Proceedings ("Tr.") 44. She has an Associate degree in computers and has worked at a number of companies performing data entry and oth-

---

1. Campbell urges the court to focus principally on her challenges to the ALJ's decision as opposed to her objections to the Recommended Ruling. To do so, however, would be to ignore the procedure established by Fed. R.Civ.P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to") and D. Conn. Local Rule 72.2 ("Any party wishing to object [to a Recommended Ruling] must ... file with the Clerk, written objection which shall specifically identify the ruling, order, proposed findings and conclusions, or part thereof to which objection is made and the factual and legal basis for such objection. In the event of such objection ... the Judge ultimately responsible shall make a *de novo* determination of those portions of the proposed decision to which objection is made"). Consequently, the court reviews *de novo* only those portions of the Recommended Ruling to which Campbell has specifically objected, and reviews the remainder only for clear error. *See Guerrero v. Tracey,* 425 F.Supp.2d 434, 436 (S.D.N.Y.2006) (holding that, "If no objections are filed [to a Magistrate Judge's Recommended Ruling], reviewing courts should review a report and recommendation for clear error").

er related tasks. Tr. 33, 71. Campbell stopped working in 1990. Tr. 33. Her insured status for disability benefits expired on June 30, 1993.[2] Tr. 55, 63.

In 1995, Campbell was diagnosed with oxygen-dependent emphysema, sleep apnea, morbid obesity, and congestive heart failure. Tr. 137. The symptoms, effects, and treatment of Campbell's illness are described, in detail, in the Recommended Ruling. Because Campbell does not object to the Magistrate Judge's recitation of the record, and because the issue before the court concerns treatment of the facts rather than the facts themselves, it is unnecessary to repeat that lengthy recitation here.

B. *Procedural History*

Campbell filed an application for SSDI on June 27, 1995, alleging that she had been disabled since March 1, 1992 due to congestive heart failure, asthma, and sleep apnea. Tr. 44–46, 67. In order to qualify for benefits, she must have been disabled on or before June 30, 1993, the last date she was insured. Tr. 63 (noting disability date last insured as 6/93). Thus, for the purposes of this action, the relevant period is March 1, 1992 to June 30, 1993.

Campbell's claim was denied initially on September 28, 1995, and on reconsideration on November 4, 1995. Tr. 48–51, 57–60. She subsequently requested an administrative hearing, which was held before ALJ Roy Liberman on June 7, 1996. Tr. 27–43, 61. At the hearing, Campbell gave testimony about her ailments, and several medical records were offered into evidence, including prescription pill bottles from 1993, records of several visits to the Emergency Room of a local hospital, and records from Campbell's treating physician, Robert Scott Prewitt, M.D.[3] Tr. 27–43. On August 26, 1996, the ALJ issued a decision in which he found that Campbell was not disabled during the relevant period. Tr. 13–22. Campbell filed a request for review of the ALJ's decision, which was denied by the Appeals Council on July 19, 2007. Tr. 7–9. She then filed a complaint for judicial review in the District of Connecticut, pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). On December 20, 2001, the court remanded the case to the Commissioner for further proceedings. Tr. 199–239; *Campbell v. Barnhart,* 178 F.Supp.2d 123 (D.Conn.2001).[4]

Upon remand, the ALJ conducted a supplemental administrative hearing on July 13, 2006, at which Dr. Prewitt testified. Tr. 276–307. On February 7, 2007, the

---

**2.** Under 42 U.S.C. § 423(c), Campbell's disability insurance expired on June 30, 1993. Tr. 55, 63. Thus, Campbell would be eligible to receive disability insurance benefits if, but only if, she can demonstrate disability, *i.e.,* the inability to perform gainful employment, before June 30, 1993.

**3.** Campbell's claim for benefits was severely complicated by the fact that she had few medical records prior to June 30, 1993—the operative date for Social Security purposes—because two of her physicians from the early 1990s had retired and no longer maintained records. Tr. 42. In order to compensate for this lack of pre-June 1993 records, Campbell obtained a retrospective opinion from her treating physician, Dr. Prewitt, who opined

that it was reasonably probable that her congestive heart failure began prior to June 30, 1993, and therefore that she was disabled prior to that date. Tr. 150. That opinion, and whether it should be given controlling weight, will be discussed in detail in Part IV, A, *infra,* at 8–10.

**4.** The court held, *inter alia,* that the ALJ "improperly discounted Campbell's subjective reports of her ailments and failed to either give sufficient deference to Dr. Prewitt's retrospective opinion or, in the alternative, failed to sufficiently clarify the basis of that opinion...." *Campbell v. Barnhart,* 178 F.Supp.2d 123, 138 (D.Conn.2001).

ALJ again found that Campbell was not disabled during the relevant period. Tr. 162–173. Campbell subsequently filed a request for review of the ALJ's decision, which was denied by the Appeals Council on September 1, 2007. Tr. 153–155, 158. This denial made the ALJ's 2007 decision the final decision of the Commissioner, subject to judicial review. 20 C.F.R. §§ 416.1455, 416.1481 (2007).

On October 19, 2007, Campbell filed the current action, and on August 22, 2008, Magistrate Judge Fitzsimmons issued the Recommended Ruling. Campbell objected to the Recommended Ruling on September 9, 2008, and this court heard oral argument regarding those objections on December 22, 2008. The court now addresses those objections.

### C. *ALJ's Disability Determination*

The Social Security Act provides that every qualifying individual who suffers from a disability is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1). A disability is defined as, "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Under the Social Security Act, the Social Security Administration (the "administration") has established a five-step, sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 416.920(a). The steps are followed in order. If at any step it is determined that the claimant is or is not disabled, the evaluation ends without proceeding to the next step.

At step one, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.920(b). Generally, if an individual has earnings from employment or self-employment above a level set out in the regulations, it is presumed that that individual has demonstrated the ability to engage in substantial gainful activity. *See* 20 C.F.R. §§ 416.974–5. If the claimant is not engaged in substantial gainful activity, the evaluation proceeds to step two.

At step two, the Commissioner must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See* 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant has an impairment or combination of impairments that is "severe," the evaluation proceeds to step three.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in the appendix to the regulations (the "Listings"). *See* 20 C.F.R §§ 416.920(d), 416.925–6. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing, and meets a duration requirement, the claimant is disabled. If not, the evaluation proceeds to step four.

At step four, the Commissioner must determine the claimant's residual functioning capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of the claimant's past relevant work. *See* 20 C.F.R. §§ 416.920(e), 416.920(f). If the claimant has the RFC to perform past relevant work, the claimant is not disabled. If the claimant is unable to perform any past

relevant work, the evaluation proceeds to the fifth and last step.

At step five, the Commissioner must determine whether the claimant is able to perform any other work, taking into consideration the claimant's RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(g). If the claimant is not able to perform other work and meets the duration requirement, the claimant is disabled.

The burden of establishing a disability is on the claimant. Once the claimant meets the burden for the first four steps of the disability evaluation, however, the burden then shifts to the Commissioner for the fifth step. *See Balsamo*, 142 F.3d at 80.

In the present case, in the February 7, 2007 decision, the ALJ found that Campbell satisfied the first two steps of the disability evaluation for the relevant period. Tr. 165. The ALJ then found that Campbell's impairment, obesity, did not meet or equal the severity of any impairment listed in the appendix to the regulations.[5] Tr. 167. At step four, the ALJ assessed Campbell's RFC and found that, during the relevant period, Campbell was able to perform her past work as a data entry operator. Tr. 172. Thus, the ALJ concluded that Campbell was not disabled during the relevant period. *Id.*

## IV. ANALYSIS

The Magistrate Judge's 26–page Recommended Ruling comprehensively reviews the ALJ's most recent decision and concludes that substantial evidence in the record supports the determination that Campbell was not disabled during the relevant period. Campbell's only objections to the Recommended Ruling—and therefore the only issues to be addressed *de novo* by this court—are that: 1) both the Magistrate Judge and the ALJ failed to correctly apply the treating physician rule;[6] and 2) both the ALJ and the Magistrate Judge improperly relied on Campbell's lack of treatment during the relevant period as evidence that she was not disabled. These objections will be addressed separately.

### A. *Treating Physician Rule*

Campbell alleges that the Recommended Ruling made an error of law in confirming the ALJ's conclusion that Dr. Prewitt's retrospective opinion was not entitled to

---

**5.** When Campbell filed her application for SSDI in 1995, the Listings included a separate impairment listing for obesity (20 C.F.R. Part 404, subpart P, app. 1, § 9.09). By the time Campbell filed her first complaint with the District Court, however, the listing for obesity had been removed from the conclusive list of disabling impairments and been replaced with more restrictive guidance. "Under the revised guidelines, obesity is not a separate listed impairment; instead, the listing now contains guidelines about obesity in the prefaces of musculoskeletal, respiratory, and cardiovascular body system listings. *See* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 F.R. 46122, 46123 (August 24, 1999)." *Campbell v. Barnhart*, 178 F.Supp.2d 123, 132 (D.Conn.2001).

When the court first considered Campbell's case, it discussed, in detail, the question of which listing should apply. The court declined to answer the question, however, concluding that such a decision would be premature. *See id.* Rather, the court directed the ALJ to use both guidelines to determine whether Campbell was disabled during the relevant period. The ALJ did so, concluding that Campbell was not disabled under either rubric. Tr. 169. Consequently, the question of which listing applies is moot.

**6.** In her Objection to the Magistrate Judge's Recommended Ruling, Campbell does not specifically object to the Recommended Ruling's analysis of the treating physician rule. Because she objects to the alleged misapplication of the treating physician rule generally, however, the court will construe this as an objection to the Recommended Ruling.

controlling weight. Objection to Magistrate Judge's Recommended Ruling ("Objection") at 5–7. Specifically, Campbell appears to argue that, under the treating physician rule, 20 C.F.R. § 404.1527, Dr. Prewitt's opinion is entitled to controlling weight because "there is no medical testimony rebutting [Dr. Prewitt's opinion, and] [t]here is no overwhelming compelling non-medical evidence to the contrary." Objection at 6–7. This argument, however, is without merit.

■ The treating physician rule is well established. "SSA regulations advise claimants that, 'a treating source's opinion on the issue(s) of the nature and severity of your impairment(s)' will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir.2003) (quoting 20 C.F.R. § 404.1527(d)(2)). The rule applies equally to retrospective opinions given by treating physicians. *See Gercke v. Chater*, 907 F.Supp. 51, 52 (E.D.N.Y.1995) (holding that, "[e]ven if the treating physician's opinion is retrospective, the opinion is binding on the ALJ unless contradicted by other medical evidence or overwhelmingly compelling non-medical evidence").

In the present case, however, the treating physician rules does not apply. Dr. Prewitt was not Campbell's treating physician during the relevant period. *See Arnone v. Bowen*, 882 F.2d 34, 41 (2d Cir. 1989) (finding that, where the claimant's claim depended on showing continuous disability from 1977 to 1980, a doctor who treated the claimant in 1974, 1975, and 1987 was not a "treating physician" within the meaning of the rule, because "there simply was no ongoing physician-treatment relationship between" the claimant and the doctor during the relevant period and the doctor was therefore "not in a unique position to make a complete and accurate diagnosis") (internal quotations and citations omitted).

Nonetheless, the fact that a subsequent treating physician, such as Dr. Prewitt, did not have that status at the time referenced in a retrospective opinion does not mean that the opinion is not entitled to significant weight. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.1981) (concluding that, although a subsequent treating physician "did not treat the [claimant] during the relevant period . . ., his opinion is still entitled to significant weight"). Moreover, in *Rivera v. Sullivan*, 923 F.2d 964 (2d Cir.1991) and *Wagner v. Secretary of Health & Human Servs.*, 906 F.2d 856 (2d Cir.1990), the Second Circuit held that a retrospective medical diagnosis by a subsequent treating physician is entitled to controlling weight when "no medical opinion in evidence contradict[s a] doctor's retrospective diagnosis finding a disability." *Rivera*, 923 F.2d at 968. It further held that, "while such medical opinions are not conclusive, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion.'" *Id.* (quoting *Wagner*, 906 F.2d at 862).

■ In the present case, however, *Rivera* and *Wagner* are inapposite. As both the ALJ and the Magistrate Judge have noted, there is substantial medical and non-medical evidence in the Record directly contradicting Dr. Prewitt's retrospective opinion. First, the record of Campbell's June 1993 visit to the Emergency Room of Bridgeport Hospital—one of the few pieces of medical evidence from the relevant period—shows elevated weight and blood pressure, but no disabling limitations. Tr. 100. There is no diagnosis of congestive heart

failure or lymphedema during that treatment, which occurred mere weeks before June 30, 1993, Campbell's date-last-insured. *Id.* The absence of diagnoses for these conditions, or documentation of physical conditions, directly contradicts Dr. Prewitt's opinion that Campbell was likely suffering from them prior to June 30, 1993.[7]

The second piece of medical evidence that contradicts Dr. Prewitt's retrospective opinion is from Campbell's admission at Bridgeport Hospital in March 1995. On the third day of treatment, a Dr. John Creatura noted that a chest x-ray indicated that Campbell showed "considerable improvement compared to the chest x-ray upon her admission," and further that her heart and lungs appeared "within normal limits ... except for some minimal residual cadriomegaly." Tr. 111. As the ALJ points out, this evidence is not consistent with cardiac findings at listing severity for at least twelve consecutive months. Tr. 169.

Finally, as the ALJ and Magistrate Judge noted, there is substantial non-medical evidence contradicting Dr. Prewitt's retrospective opinion. When Campbell testified at the first ALJ hearing, she stated that in 1992 and 1993 she could go to church, attend her children's school functions, play outside with her children, shop, cook, drive herself to run errands, and take care of her household. Tr. 38–40. She testified that she was unable to do those same activities in June 1996. Tr. 38. Moreover, in March 1995, she told Bridgeport Hospital staff that her acute symptoms occurred for only a short time, and she specifically denied any history of asthma or heart disease. Tr. 101–102. This

self-reported evidence is not consistent with a disability onset prior to June 30, 1993, as opined by Dr. Prewitt. Thus, Dr. Prewitt's opinion is inconsistent with the other substantial evidence in the Record. As a result, the ALJ and the Magistrate Judge did not commit an error of law in determining that, in this case, Dr. Prewitt's retrospective opinion is not entitled to controlling weight.

### B. *Lack of Treatment as Evidence of Non–Disability*

Campbell next objects to the Recommended Ruling on the grounds that, in concluding that Campbell was not disabled during the relevant period, the ALJ and the Magistrate Judge improperly relied on Campbell's failure to seek treatment for heart failure and or edema prior to March 1995. Objection at 7.

In his decision, the ALJ stated that, "It is simply not persuasive to assume that [Campbell] had disabling heart failure and/or edema in 1993 but did not seek treatment for those symptoms until 1995. She had access to treatment at Bridgeport Hospital in 1993 through 1995, as shown in clinic notes." Tr. 168. The Magistrate Judge repeated the ALJ's statement in the Recommended Ruling's discussion of Dr. Prewitt's retrospective opinion. *See* Recommended Ruling at 14.

Campbell now asserts that her failure to seek treatment may not be used as evidence that she is not disabled. In support of this argument, Campbell cites a number of cases, including *Shaw v. Chater,* 221 F.3d 126 (2d Cir.2000). In *Shaw,* the Second Circuit held that, "[w]hile it is conceivable that a three-year gap in plaintiff's medical treatment might be part of a more

---

**7.** At oral argument, Campbell's counsel asserted that the ALJ should have disregarded the lack of diagnoses in this record because it is unreasonable to expect an Emergency Room physician to detect any of the severe conditions indicated by Dr. Prewitt when the patient presented for a fever, sore throat, and congestion. The court does not agree.

extensive inquiry into whether he was in fact disabled, the fact of this time lapse does not negate the compelling evidence in the record as a whole that plaintiff was completely disabled." *Id.* at 133. The present case is distinguishable from *Shaw*, however, because the ALJ has determined that, even without considering Campbell's failure to seek treatment, the Record contains compelling evidence that Campbell was not disabled prior to June 30, 1993. Therefore, the ALJ in the present case does not cite Campbell's failure to seek treatment to negate other compelling evidence; rather, he lists it as merely one of a number of pieces of evidence that, collectively, gave him reason to discredit Dr. Prewitt's retrospective opinion.

The other cases Campbell cites discuss situations in which the claimants' gap in treatment were directly attributable to their indigence. In such cases, courts have consistently held that a disabled claimant cannot be denied benefits for failing to obtain treatment she could not afford. *See, e.g., Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir.1995). In the present case, however, there is no indication that Campbell did not seek treatment because of an inability to pay. In fact, the Record shows that Campbell had access to treatment from 1991 to June 1993, and again in March 1995. Tr. 35–40. The Record contains no evidence that would support a finding that this access existed for a number of years, ceased for exactly 20 months, and then returned.

■ The law is clear, however, that an ALJ may not draw negative inferences from a claimant's lack of treatment without considering any explanations the claimant may provide. *Social Security Ruling 96–7p,* 1996 WL 374186, 1996 SSR LEXIS 4. At the 1996 hearing, Campbell clearly indicates her displeasure with the medical treatment she received from 1991 through 1993. She stated that, every doctor "would tell me the same thing [*i.e.,* to lose weight], so I guess I got to the point where I was disgusted." Tr. 40. In his decision, the ALJ did not consider Campbell's frustration with her doctors as an explanation for why she did not seek treatment from 1993 to 1995. Consequently, it was an error of law for the ALJ to draw a negative inference from Campbell's failure to seek treatment.

■ Nonetheless, this error was harmless. The ALJ's determination that Campbell was not disabled during the relevant period is valid despite his improper reliance on Campbell's failure to seek treatment. As discussed above, the ALJ gave multiple reasons for discounting Dr. Prewitt's retrospective opinion, and all except the failure to seek treatment are legally sound. *See, e.g., Carmickle v. Comm'r of SSA,* 533 F.3d 1155, 1162 (9th Cir.2008) (holding that, "so long as there remains substantial evidence supporting the ALJ's conclusions ... and the error does not negate the validity of the ALJ's ultimate conclusion, such [error] is deemed harmless and does not warrant reversal") (internal quotations omitted).

As a result, the court does not adopt the portion of the Recommended Ruling that discusses the ALJ's reliance on Campbell's failure to seek treatment.

### C. *Substantial Evidence Determination*

Under the relevant standard of review, absent an error of law, this court must uphold the ALJ's decision if it is supported by substantial evidence, even if the court might have ruled differently. *See Eastman v. Barnhart,* 241 F.Supp.2d 160, 168 (D.Conn.2003).

As discussed above, despite Campbell's protestations, the ALJ has made no fatal

error of law. The one legal error the ALJ made was harmless. To the extent the Recommended Ruling repeated the ALJ's faulty legal analysis regarding Campbell's failure to seek treatment from 1993 to 1995, that error is not adopted by the court. The only remaining question, then, is whether the ALJ's determination that Campbell was not disabled during the relevant period is supported by substantial evidence. The court concludes that it is so supported.

■ Normally, the retrospective opinion of an applicant's subsequent treating physician is given controlling weight if the record contains neither any medical opinion nor any overwhelmingly compelling non-medical evidence which contradicts the retrospective diagnosis finding a disability. In this case, however, the ALJ states that he gives Dr. Prewitt's retrospective opinion less weight because it is contradicted by substantial medical and non-medical evidence in the Record. Tr. 171. The ALJ considered all the evidence in the Record in reaching this decision. This includes Campbell's 1996 testimony, that, in 1992 and 1993, she could leave home to go to church, attend her children's school functions, play outside with her children, shop and cook, drive herself to run errands, and take care of her household—all activities which she could not perform in 1996. Tr. 38–40. It includes a hospital record from June 1993 showing none of the diagnoses which Dr. Prewitt opines were likely present at that time. Tr. 100, 292–293. It includes the fact that Campbell did not begin taking oxygen until March 1995. Tr. 39. It includes Campbell's March 1995 statements to Bridgeport Hospital staff that her acute symptoms occurred for only a short time, and that she had no history of asthma or heart disease. Tr. 101–102. It includes an x-ray from Campbell's hospital admission in 1995 that showed consid-

erable improvement over an x-ray taken three days earlier, which is inconsistent with an impairment of the severity and duration needed to meet the listing standards. Tr. 111. It includes a doctor's assessment that in March 1995, Campbell's heart and lungs appeared "within normal limits ... except for some minimal residual cadriomegaly." *Id.*

Alone, none of these facts may rise above a "mere scintilla" of evidence. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation and citation omitted). Indeed, if this court were deciding this case in the first instance, it might not find the existence of "overwhelmingly compelling non-medical evidence" required to discredit Dr. Prewitt's opinion. *See Rivera v. Sullivan,* 923 F.2d 964 (2d Cir.1991). Taking all the facts together, however, they satisfy the substantial evidence standard the court must apply. That is, a reasonable mind might accept these facts as adequate to support the conclusion that Campbell could sustain employment as a data entry operator prior to June 30, 1993. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Thus, the ALJ's decision is supported by the Record, and Campbell's Motion to Vacate must be denied.

## V. CONCLUSION

For the reasons discussed herein, and based on a review of the Magistrate Judge's Recommended Ruling [Doc. No. 17], that ruling is **AFFIRMED, ADOPTED,** and **RATIFIED,** in part. Accordingly, the plaintiff's Objections to the Magistrate Judge's Recommended Ruling [Doc. No. 18] are **OVERRULED,** in part, and **SUSTAINED,** in part, as discussed herein. Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. No. 13] is **DENIED,** and defendant's Motion to

Affirm the Decision of the Commissioner [Doc. No. 15] is **GRANTED.** Judgment shall enter for the defendant, and the Clerk is directed to close the case.

**SO ORDERED.**