NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FEB 12 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

GEORGE ROBERT DUROSE,

          Plaintiff-Appellant,

  v.

ANDREW M. SAUL, Commissioner of
Social Security,

          Defendant-Appellee.

No. 18-35973

D.C. No. 1:17-cv-00111-TJC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Timothy J. Cavan, Magistrate Judge, Presiding

Argued and Submitted June 5, 2020
Portland, Oregon

Before: TASHIMA, BERZON, and COLLINS, Circuit Judges.

Memorandum joined by Judge TASHIMA and Judge COLLINS;
Dissent by Judge BERZON

George Durose appeals from the district court's order affirming the decision

of the Commissioner of Social Security denying his claim for disability insurance

benefits under the Social Security Act.  We affirm.

    1.  The ALJ provided sufficiently "specific, clear and convincing reasons"

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

for rejecting Durose's testimony concerning the severity of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (simplified). The ALJ concluded that the objective medical evidence did not support Durose's claimed limitations and that the course of his response to treatment indicated that his symptoms were less severe than he claimed. We have recognized that such considerations may supply clear and convincing reasons for rejecting a claimant's testimony, *see Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), and substantial evidence supports the ALJ's conclusions.

In particular, the ALJ noted that Durose's neck pain responded well to his October 2012 surgery; that his lumbar pain was helped by physical therapy; and that his claims of disabling shoulder pain after October 2013 were not supported by the medical record. As to the latter issue, the ALJ pointed out that, although Durose rated his pain level as a "9.0" out of "10" during his November 2013 examination by Dr. Arguelles, the doctor's treatment notes reflected that Durose was "[i]n no acute distress."[1] The ALJ also noted that, although Durose complained of ankle and shoulder pain to a treating physician, Dr. Mehia, in May

---

[1] The dissent notes that the very high pain rating that Durose gave during his examination reflected an *average* pain level over the *entire* prior week. *See* Dissent at 1. But we are not entitled to reweigh the evidence, and we cannot say that the ALJ erred in concluding that Durose's claim of such a high pain level was inconsistent with his not being in distress during the examination.

2

2014, Durose did not see Dr. Mehia again until December 2014, at which time he only complained of "malaise, sore throat, and cough." The ALJ also relied on the observations and impressions of Dr. Healow, a non-treating examining physician. The ALJ credited, as consistent with the overall medical evidence, Dr. Healow's conclusion that Durose's shoulder pain would limit overhead work but that Durose's "imaging scans and exam showed no objective rationale to limit standing, walking, or sitting." Regardless of whether we would have weighed the evidence the same way, we conclude that the ALJ's conclusion was reasonable and adequately considered these doctors' records. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Durose points to Dr. Arguelles's multiple suggested possible diagnoses, but the ALJ permissibly gave them little weight inasmuch as Dr. Arguelles noted that additional tests were needed to draw any firm conclusions, and those tests were never conducted. Durose contends that the ALJ failed to take into account that Durose could not afford these additional tests, but we find no error. The ALJ simply noted the incompleteness of Dr. Arguelles's possible diagnoses, and we are aware of no authority that requires an ALJ to overlook an affirmative gap in the evidence simply because the claimant assertedly lacks the financial resources to

3

obtain additional medical *evidence* that might fill that gap. The case on which Durose relies addresses the very different situation in which a claimant was unable to obtain "medical treatment that would ameliorate his condition," thereby resulting in a situation that affirmatively rendered him disabled. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

Durose correctly notes that the ALJ did not discuss the treatment notes from an examination performed by Dr. Klepps in June 2015, but this provides no basis for setting aside the ALJ's determination. Given that this examination occurred nearly a year after the last date that Durose met the insured status requirements of the Social Security Act, it would be relevant only to the extent that it bore upon the "evaluation of [his] preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (simplified). The report does note that Durose told Dr. Klepps that he had had pain in the shoulder for the last several years, but this information was already captured in the reports that the ALJ did consider. Beyond that, the report reflects that Dr. Klepps recommended an MRI and surgery to address what he suspected was the likely progression of a rotator cuff tear and that Durose responded by saying that he "would rather live with this" and "would not be interested in surgery anyway." Given that the ALJ considered the medical evidence concerning Durose's shoulder during the pre-expiration period and specifically took into account the resulting effect on his ability to perform

4

"overhead work," and given that this post-expiration report at most revealed a subsequent progression that, even then, Durose "would rather live with" than have surgery, we perceive no grounds for disturbing the ALJ's determination. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[B]ecause the ALJ is not required to discuss evidence that is neither significant nor probative, we conclude that the ALJ's failure to discuss this report was not error." (citation omitted)).

2. We reject Durose's arguments that the ALJ erred in determining that work that he can perform exists in the national economy in significant numbers. Durose argues that the ALJ should have found him to be limited to "sedentary" work and should have applied a Grid rule reflecting that limitation, but this contention ultimately rests on Durose's disagreement with the ALJ's weighing of the record evidence. As we have explained, the ALJ permissibly weighed the evidence differently.

Based on his evaluation of the evidence, the ALJ properly concluded that Durose's situation was not captured by a Grid rule, and he therefore consulted a vocational expert. *See Thomas*, 278 F.3d at 960 ("[W]hen a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert . . . ."). Durose's contention that the ALJ improperly posed a hypothetical question to the

vocational expert is based on his view that he had additional limitations that the ALJ should also have included. But this argument is simply another repackaging of Durose's contention that the ALJ should have weighed the evidence differently. Given that the "hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record," the "ALJ's reliance on testimony the [vocational expert] gave in response to the hypothetical therefore was proper." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**AFFIRMED.**

FILED

FEB 12 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

1. The administrative law judge ("ALJ") did not provide clear and convincing reasons to support his finding that Durose was "not entirely credible" as to the "intensity, persistence and limiting effects" of his symptoms. *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017).

As the majority notes, the ALJ relied on treatment records showing that Durose was experiencing no neck pain in April 2013, six months after he had undergone neck surgery. But by October 2013, Durose reported to his treating physician, Dr. Mehia, that his neck pain had returned and had been "getting worse for the past couple months." Dr. Mehia made arrangements for Durose to see Dr. Arguelles, a rheumatologist, "as soon as possible."

Dr. Arguelles examined Durose in November 2013. The ALJ apparently interpreted Durose's report to Dr. Arguelles that "his pain level was 9 out of a maximum of 10" as evidence that Durose was not credible, since Dr. Arguelles found he was in "no acute distress." But this interpretation is not supported by the record. Dr. Arguelles's report says Durose's average pain level during the last week was 9 out of 10, not that it was 9 *during* the examination. Dr. Arguelles noted "[c]ervical region tenderness on palpation," as well as pain in many other areas.

1

The ALJ relied heavily on a consultative examination performed by Dr. Healow for the state agency. As the ALJ recounted, Dr. Healow found "no physical or xray evidence justifying restriction in standing, walking or sitting." But the ALJ did not mention Dr. Healow's further finding of "no indication in [Durose's] exam that he is misreporting his pain," or his recommendation of a "rheumatology workup" that may "produce more information referent to alleged poly arthritis."

Finally, the ALJ interpreted the treatment notes from Durose's December 2014 visit to Dr. Mehia as an indication that he "was receiving routine and conservative care." At that time, according to the ALJ, Durose visited his doctor "merely complaining of malaise, sore throat and cough," and Dr. Mehia prescribed fluids and rest. But the fact that Durose "did not mention any musculoskeletal pain or limitations" when he went to see his doctor for a sore throat does not mean that he was not suffering from any such pain. Ordinarily one does not on a visit to one's doctor for a minor illness discuss everything that is wrong with one.

The ALJ's reasons for finding Durose "not entirely credible" are not clear and convincing. I would hold that the ALJ erred in his credibility finding relating to Durose. *See Diedrich*, 874 F.3d at 643.

2.      The ALJ also erred by ignoring entirely a report by Dr. Klepps, an orthopedist Durose saw in June 2015 for an evaluation of his right shoulder. *See*

2

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). Although the examination took place after Durose's last insured date, it was "relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)).

Dr. Klepps reviewed an MRI from 2011, saw a possible "full-thickness" rotator cuff tear, and opined that the tear had "likely progressed." Dr. Klepps was sufficiently "concerned" that he "recommended surgery." The majority discounts Dr. Klepps's report as insignificant because Durose declined surgery and said he would "rather live with this." But Durose had multiple reasons to decline surgery unrelated to the seriousness of his condition. Dr. Klepps noted both that "surgery would not alleviate all of his pain" and that Durose was unenthusiastic about surgery "given his lack of response to his recent neck surgery." Additionally, Durose was uninsured. Regardless of Durose's decision not to pursue surgery, Dr. Klepps considered Durose's condition serious enough that "he would likely benefit from surgery." That finding was sufficiently significant and probative that the ALJ should have considered it.

I dissent.