**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL BERRY,

*Plaintiff-Appellant,*

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

*Defendant-Appellee.*

No. 09-35421

D.C. No.
3:08-cv-05149-FDB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Franklin D. Burgess, Senior District Judge, Presiding

Argued and Submitted
March 5, 2010—Seattle, Washington

Filed September 22, 2010

Before: A. Wallace Tashima, Raymond C. Fisher and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Charles W. Talbot, Tacoma, Washington, for the appellant.

Jeffrey C. Sullivan, United States Attorney, Brian C. Kipnis, Assistant United States Attorney, David Morado, Regional Chief Counsel and L. Jamala Edwards (argued), Assistant Regional Counsel, Social Security Administration, Office of General Counsel, Seattle, Washington, for the appellee.

**OPINION**

FISHER, Circuit Judge:

In September 2005, Daniel Berry, a military veteran and former commercial courier driver born in 1959, filed a claim for disability insurance benefits under 42 U.S.C. § 423 and supplemental security income benefits under 42 U.S.C. § 1382. His claim was denied upon a finding that he could return to his past relevant work and therefore was not disabled. That finding was based in part on the conclusion that whether Berry could pass a drug test was irrelevant to the determination of disability, even if Berry could prove that he needed to be able to pass such a test to perform his past relevant work. We disagree with that conclusion and therefore remand for further administrative proceedings.

**Background**

Before his alleged disability, Daniel Berry worked about 14 years as a military communications and computer supervisor, followed by about 6 years as a courier driver. He left his job as a courier driver on June 10, 2000.

As a veteran, Berry sought treatment for various medical conditions through the Department of Veterans Affairs (VA). In September 2001, the VA determined that Berry was "entitled to individual unemployability" status as of July 1, 2000, finding that his "main difficulty with unemployment is his pain regime and that potential employers would not tend to hire him due to his inability to pass a drug test due to his pain medications, abnormal gait and limitations due to his service connected low back disability."

Berry applied for social security disability benefits in September 2005. He claims that he has been disabled since his last date of employment as a courier driver in June 2000 and that his disability is a result of chronic low back pain, degenerative disk disease, degenerative arthritis on both hips, bilateral knee degeneration, sleep apnea, depression, diabetes, obesity, hearing loss, hemorrhoids and night sweats. After the Social Security Administration (SSA) denied his claim, Berry sought and obtained a hearing before an Administrative Law Judge (ALJ).

At his hearing in July 2007, Berry argued that he could not return to his past relevant work as a courier driver because that job has a mandatory drug testing requirement that his prescribed pain medications would cause him to fail. The ALJ observed that the general job description in the Dictionary of Occupational Titles (DOT) does not mention a drug testing requirement and declined as "irrelevant" Berry's offer to prove that the job carries such a requirement in practice. Nor did the ALJ consider whether, if such a requirement exists, Berry was physically capable of meeting it.

In a decision dated September 12, 2007, the ALJ performed a sequential evaluation and determined that Berry was not disabled. *See* 20 C.F.R. 404.1520 (describing the five-step sequential evaluation for assessing disability claims). At step one, the ALJ found that Berry had not engaged in substantial gainful activity since June 2000. At step two, he found that

Berry had one medically determinable impairment that significantly limited his ability perform basic work activities: lower back pain. The ALJ also considered and rejected Berry's claims that several other conditions impaired his ability to work. At step three, the ALJ determined that Berry's qualifying impairment does not meet the criteria to establish disability automatically, regardless of age, education or work experience. In order to determine at step four whether Berry could return to his past work, the ALJ performed a residual functional capacity (RFC) analysis. During that analysis, the ALJ discounted some of Berry's subjective complaints about the effects of his lower back pain, finding them inconsistent with some of his self-reported activities. Having completed his RFC findings, the ALJ found that Berry could return to his past work as a courier notwithstanding his functional limitations. The ALJ therefore found that Berry was not disabled, without reaching step five.

Berry appealed the ALJ's decision to the district court. The district court affirmed the ALJ, adopting over Berry's objections a magistrate judge's report and recommendation. This appeal followed.

## Standard of Review

We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's judgment upholding the denial of social security benefits. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). We will "set aside a denial of benefits only if it is not supported by substantial evidence or is based on legal error." *Id.* (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

## Discussion

### I.

Berry argues that the ALJ erred by finding that Berry could return to his past work regardless of whether that work has a

drug testing requirement that he could not meet because of his prescription pain medication. We agree with Berry. If a drug prescription disqualifies a claimant from performing his past relevant work, he is not capable of returning to that work. Therefore, the ALJ erred by precluding Berry from making a record whether his medically required need to take prescription drugs would bar him from working as a courier.

**[1]** The SSA's regulations explain that "[a]t the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(iv). To make this determination, the SSA "will compare [its] assessment of your residual functional capacity with the physical and mental demands of your past relevant work." *Id.* § 404.1560(b); *see also id.* § 404.1520(f) (same); Social Security Ruling 82-62, 1982 WL 31386, at *2 (explaining that step four "requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work"). Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment. *See* 42 U.S.C. 423(d)(2)(A) (requiring that claimant's disability be determined "regardless of . . . whether he would be hired if he applied for work").

**[2]** Applying this requirement, the ALJ and the district court concluded that any requirement that couriers be free (or nearly free) of prescription pain medication would be a mere hiring practice, relevant to whether Berry could *obtain* his past work but not relevant to whether he could *perform* it — i.e., *not* a "physical [or] mental demand" of the work and therefore not relevant to the disability determination. In particular, the ALJ observed (accurately) during the hearing that the DOT job description for couriers does not include the ability to pass a drug test as a requirement of the job, *see* DOT

230.663-010, 1991 WL 672160, and the magistrate judge, in the report the district court adopted, expressly concluded that inability to pass a drug test "is not the kind of work-related (i.e., physical or mental) limitation or restriction the Social Security regulations contemplate." The Commissioner so argues on appeal.

**[3]** We reject these restricted readings of the law. If it is true, as Berry offered to prove, that Berry's prescribed medication regime to treat his potentially disabling condition would categorically prevent him from obtaining work as a courier by rendering him physically unable to pass a drug test that is mandatory across employers, then he cannot meaningfully be said to be capable of working as a courier. A mandatory requirement that employers cannot hire people with a certain level of pain medication in their blood is in essence a physical demand of the job. The ALJ was not permitted to ignore the possibility that such a mandatory requirement exists, in the face of Berry's offer of proof, merely because no such physical demand appears in the DOT.

**[4]** A mandatory drug testing requirement of the kind Berry alleges is not a mere hiring practice that is irrelevant to the determination of disability. Under 42 U.S.C. § 423 (d)(2)(A), an individual is disabled "only if his physical or mental impairment [is] of such severity that he is . . . unable to do his previous work [or] engage in any other kind of substantial gainful work . . . regardless of . . . whether he would be hired if he applied for work." The language excluding consideration of whether a claimant who sought work would in fact be hired cannot be construed to include a hiring practice that is directly tied to the claimant's disability. Otherwise, the limiting language would defeat the entire statutory scheme, which provides benefits for individuals who cannot work due to a disability. This understanding of the statute — as intended to exclude from consideration "employer preferences" not directly related to a "medically determinable physical or mental impairment" — is consistent with its legislative

purpose. *See* S. Rep. No. 90-744, at 41 (1967), *reprinted in* 1967 U.S.C.C.A.N. 2834, 2882; *cf. Sorenson v. Weinberger*, 514 F.2d 1112, 1117-19 (9th Cir. 1975) (per curiam) (interpreting the amended definition of disability and affirming denial of disability benefits to a claimant for whom substantial evidence supported the determination that he was physically and mentally able to work even though he "ha[d] not been released by medical doctors to return to work").[1]

The alleged drug-testing requirement in this case is not a mere hiring practice. First, Berry has offered to prove that the drug testing is imposed on employers of courier drivers by statute and so is not merely an elective hiring preference.[2]

---

[1]Thus, for example, as we recently concluded in a nonprecedential decision, a claimant physically and mentally capable of performing his past work as a security guard cannot defeat a finding of nondisability by arguing that his criminal record will prevent him from obtaining that work. *See Hunter v. Astrue*, 254 Fed. App'x 604 (9th Cir. 2007).

[2]In particular, Berry argues that federal and state laws require applicants for a Commercial Driver's License (CDL) to pass drug tests, and that he would need a CDL to work as a courier driver. The DOT includes Berry's past work as a courier driver under its definition of a broad category of jobs it labels "deliverer, outside," not all of which involve driving, not to mention requiring a CDL. *See* DOT 230.663-010 (defining the job to include "[d]eliver[ing] . . . items to business establishments and private homes, traveling on foot or by bicycle, motorcycle, automobile, or public conveyance"). Relying on this broad definition, the Commissioner of Social Security argues that we should affirm the finding of nondisability because Berry can return to his past relevant work *as generally performed*, even if he may not be able to return to his actual previous job as a courier driver of commercial vehicles. *See generally* Social Security Ruling 82-61, 1982 WL 31387 (stating the policy that a claimant will be found not disabled at step four if he or she can perform *either* "(1) [t]he actual functional demands and job duties of a particular past relevant job; *or* (2) [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy"). We are not persuaded. Even if Berry retains the RFC to perform delivery work without a CDL, the ALJ did not make findings sufficient to support that conclusion. Given Berry's claims of lower back pain, for example, it is not self-evident that he could travel "on foot or by bicycle [or] motorcycle," as a non-driver courier might. That leaves only courier service by "public conveyance," which does not likely constitute performance "as generally required by employers." In any case, Berry was not given a sufficient opportunity to establish a record on this issue.

Second, the level of pain medication in Berry's system as a result of his prescribed treatment regime is a direct physical consequence of his impairment, its related symptoms and his physician-prescribed treatment. *See* 20 C.F.R. § 404.1545(a)(1) ("Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations."); 20 C.F.R. § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, . . . include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms."). Third, in this context the alleged drug-testing requirement appears on its face directly related to a job applicant's ability safely to meet the physical and mental demands of the job — there is no indication yet in the record that it serves a hiring preference distinct from the physical and mental demands of the job. In these circumstances, when the alleged requirement is mandatory and closely related to the physical and mental demands of the job as employers understand them, and Berry's inability to meet it is a direct physical result of prescribed medical treatment for an acknowledged impairment, the alleged requirement cannot be disregarded as a mere hiring preference.

**[5]** The district court also relied on the lack of evidence in the record that courier driver jobs carry a mandatory drug testing requirement or that Berry would be unable to pass such a test. Although the claimant bears the burden at step four to show he is unable to return to his past relevant work, *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999), it was error to fault Berry for failing to meet that burden when he was prevented from presenting relevant evidence because of the ALJ's legal error. In particular, Berry offered to submit evidence that the DOT job description was out of date and that "in today's environment . . . drug testing is essentially a mandatory requirement" for courier drivers. The

ALJ refused to consider whether Berry was correct, specifically opining that he need not consider "today's environment" because "the regulations tell me to look at the DOT" and "don't say anything about what's going on in the world today." This refusal was based on a legally erroneous reading of the regulations, and Berry must be permitted to prove his contention that drug testing requirements make it physically impossible for him to perform his past relevant work.

**[6]** We therefore vacate the ALJ's finding of nondisability and remand for further administrative proceedings. On remand, the ALJ may reconsider Berry's RFC, including whether the amount of prescribed medication in his system would render him physically unable to pass a drug test, assuming Berry can establish that his past relevant work carries a mandatory drug testing requirement.[3]

## II.

Berry raises several other arguments related to the ALJ's evidentiary decisions, adverse credibility finding, RFC determination and decision to disagree with the VA's determination that Berry was disabled. Although our broad remand leaves the ALJ free to revisit these rulings, in the interest of efficiency we address Berry's arguments to the extent they may be relevant on remand.

## A.

First, Berry contends that the ALJ erred in finding Berry's subjective complaints about the intensity, persistence and lim-

---

[3]Berry also contends that the ALJ abused his discretion by refusing to allow Berry to cross-examine the vocational expert about whether there are mandatory drug testing requirements for courier drivers. Given our remand for a new hearing, we need not resolve this claim. On remand, Berry must be given a chance to prove that he is unable to return to his past work.

iting effects of his symptoms "not entirely credible." The ALJ found that Berry suffers from lower back pain and that this "medically determinable impairment could reasonably be expected to produce the alleged symptoms," but ultimately rejected Berry's complaints of subjective side effects from pain medication, such as dizziness, lack of focus and confusion, because of inconsistencies between Berry's complaints and reported activities.

"Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Instead, "for the ALJ to reject the claimant's complaints, the ALJ must provide specific, cogent reasons for the disbelief." *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (quoting *Lester*, 81 F.3d at 834) (internal quotation marks and alterations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ concluded that Berry was not entirely credible because he found contradictions between complaints in Berry's 2005 activity questionnaire and hearing testimony and some of his other self-reported activities. On the one hand, some of Berry's statements supported his hearing testimony that his ability to perform activities of daily living was severely limited because he could sit or drive for only one hour at a time before needing to lie flat on his back for 30 to 60 minutes, he had to rely on a roommate to handle cleaning and laundry and his only social activities outside the house were doctors' appointments and occasional meetings of an amateur radio club. In particular, Berry said in the questionnaire that he had difficulty putting on shoes and getting in and out of the bathtub, relied on friends to remember "to care for . . . personal needs" and had a limited ability to "remember,

complete tasks, concentrate, understand [and] follow instructions." Berry also indicated on the questionnaire that "without [pain] drugs — the *pain* would prohibit most of [his reported activities]" but that he could "do most, with limits — with . . . pain meds . . . although sometimes in a stupor."

On the other hand, some of Berry's other self-reported activities and self-evaluations suggested a higher degree of functionality. In particular, Berry's VA medical records from the period between 2000 and 2006 reflect that he told medical staff he engaged in daily walks of a mile or more, had various social engagements, drove his car and did crossword puzzles, computer work, pet care, cooking, laundry and other housekeeping. Berry also reported camping and hiking at Yellowstone National Park and "getting out a little bit more socially," and according to a 2005 VA physician's report he described a typical day that tended to contradict his hearing testimony that he regularly needed to lie flat on his back and relied on friends for cooking and cleaning. Finally, the ALJ pointed to affirmative evidence of malingering, including that Berry reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits, and claimed disability dating from his last day of employment even though he admitted at the hearing that he left his job because his employer went out of business and probably would have worked longer had his employer continued to operate.

**[7]** The ALJ found that these self-reported activities undermined Berry's credibility and suggested a "greater functional capacity" than Berry claimed in his 2005 activities questionnaire and hearing testimony. Based on the evidence reviewed above, we agree that the inconsistencies in Berry's reported symptoms and activities adequately support the ALJ's adverse credibility finding and justify his decision to discount some of Berry's subjective complaints. *See Bray*, 554 F.3d at 1227 ("In reaching a credibility determination, an ALJ may weigh consistencies between the claimant's testimony and his or her

conduct, daily activities, and work record, among other factors.").

## B.

Second, Berry contends that the ALJ failed to fully consider the effects of Berry's multiple narcotic pain medications on his ability to function. When analyzing symptoms related to a medical impairment, the regulations promise that the ALJ will consider "[t]he type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate . . . pain." 20 C.F.R. § 404.1529(c)(3)(iv). The record shows that the ALJ considered some side effects from medication, such as visual dreams, erectile dysfunction and dizziness. The ALJ also acknowledged but discounted as "not fully credible" Berry's complaint "that his pain medications caused some mental confusion and affected his balance." On this record, we cannot say that the ALJ failed even to consider the effects of Berry's pain medications on his ability to function. Nonetheless, as explained above, the ALJ is free on remand to revisit his RFC determination, including further considering whether the type and dosage of Berry's pain medications render him incapable of meeting the physical and mental demands of his past work as a courier, such as the ability to meet a mandatory drug-testing requirement, if such a requirement exists.

## C.

Third, Berry contends that the ALJ erred by failing to include all of Berry's limitations in the hypothetical to the vocational expert (VE). We do not resolve this claim. It does not appear that the step four determination that Berry challenges was based on the VE's testimony, and in any event, whether or not the ALJ's hypothetical was consistent with the RFC determination the ALJ previously relied on, the ALJ will be free on remand to reassess Berry's RFC and to hear further testimony from a VE or other sources.

D.

Finally, Berry contends that the ALJ improperly disregarded the VA's decision that Berry was completely disabled as of July 1, 2000. A VA determination of disability is "ordinarily" entitled to "great weight," but an ALJ may "give less weight to VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Valentine*, 574 F.3d at 694-95 (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)) (internal quotation marks omitted).

The ALJ gave three reasons for "discounting" the VA determination. We reject two of them and accept the third in part. First, the ALJ noted that the SSA is not bound by the VA's determination because the governing rules differ. This is not a "persuasive, specific, valid reason[ ]" for discounting the VA determination. *See Valentine*, 574 F.3d at 695 ("Insofar as the ALJ distinguished the VA's disability rating on the general ground that VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*."). Second, the ALJ gave "no weight" to the VA's finding that the claimant was unemployable because the VA based its disability determination in part on the fact "that potential employers would not tend to hire [Berry] due to his inability to pass a drug test due to his pain medications," a matter the ALJ considered irrelevant to the social security disability determination. Because we disagree with that consideration, we also reject this basis for discounting the VA's disability determination as invalid and unpersuasive.

**[8]** Third, the ALJ acknowledged the VA's determinations that Berry's sleep apnea and back pain (as distinct from the effects of pain medication to control that pain) were at least partially disabling, but disagreed with that determination, citing medical evidence that the apnea was "adequately controlled" and the "back pain appear[ed] stable with pain medication." Elsewhere in his decision, the ALJ reviewed in

detail medical records related to Berry's sleep apnea and back pain. The medical records on which the ALJ relied specifically support his conclusion that Berry's sleep apnea had improved since the VA's disability determination and was well controlled by the prescribed treatment, resulting in "minimal functional limitations due to sleep apnea" by the time the hearing occurred. They also support the ALJ's conclusion that Berry's pain — as distinct from the effects of medication to control that pain — was adequately controlled with medications so as not to be completely disabling. The ALJ's assessment of these specific records is both persuasive and valid. We therefore conclude that the ALJ's reasons for disagreeing with the VA about the disabling effects *of these particular impairments* are sufficiently "persuasive, specific, valid [and] supported by the record." *Valentine*, 574 F.3d at 695 (quoting *McCartey*, 298 F.3d at 1076) (internal quotation marks omitted). They do not, however, represent a complete basis for discounting the VA's disability determination. Accordingly, the ALJ on remand should reconsider with appropriate deference the effect, if any, of the other bases for the VA's disability determination.

## Conclusion

**[9]** The judgment of the district court is reversed and the matter is remanded to the district court with instructions to remand to the Commissioner for further administrative proceedings. Consistent with this opinion, the ALJ's determination that Berry is not disabled is based on legal error and is therefore vacated. Appellee shall bear the costs of the appeal, to the extent authorized by law.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**