**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

KAY D. MCCAWLEY,

      Plaintiff - Appellant,

  v.

MICHAEL J. ASTRUE,

      Defendant - Appellee.

No. 10-35056

D.C. No. 9:09-cv-00039-JCL

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Jeremiah C. Lynch, Magistrate Judge, Presiding

Argued and Submitted February 11, 2011
Seattle, Washington

Before: B. FLETCHER, PAEZ, and IKUTA, Circuit Judges.

    The ALJ's determination that McCawley could "stand/walk no more than 2 hours" and "sit about 6 hours" in an 8-hour workday was not supported by substantial evidence. Although Dr. Forney's two medical source statements could have supported the ALJ's determination, it is unclear whether the ALJ treated Dr.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Forney's assessments of McCawley's sitting and standing abilities as separate medical opinions and relied on the higher estimates of each. This would be a permissible approach under SSR 96-5p, because the stand/walk and sit assessments could be considered "separate medical opinions regarding diverse physical . . . functions." SSR 96-5p. The ALJ, however, did not state that he was following this approach or point to any other evidence in the record supporting his conclusion. *Cf. Tackett v. Apfel*, 180 F.3d 1094, 1102–03 (9th Cir. 1999). Because a claimant's residual functional capacity (RFC) "may be the most critical finding contributing to the final . . . decision about disability," SSR 96-5p, we remand to the agency to clarify the basis for the ALJ's RFC determination.

The remainder of McCawley's arguments lack merit. The ALJ gave "specific and legitimate" reasons for discounting Dr. Chandler's opinion that McCawley could stand and walk only 45 minutes to 1 hour in an 8-hour workday. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Among other reasons, the ALJ noted the inconsistency between Dr. Chandler's statement that McCawley's fracture was "currently in the process of healing" and his own treatment records. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ also gave "specific and legitimate" reasons for partially discounting Dr. Forney's opinion about McCawley's functional limitations. *See Orn*, 495 F.3d at 632. For example,

2

the ALJ noted that Dr. Forney was opining outside her area of specialization, *see Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(5)), and that her statement that McCawley's fracture was "displaced" was inconsistent with the medical evidence, *see Bayliss*, 427 F.3d at 1216.

The ALJ also gave "clear and convincing" reasons for discounting certain portions of McCawley's symptom testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1283–84 (9th Cir. 1996). The ALJ discounted McCawley's testimony regarding her "catching" problem because it was unsupported by objective medical evidence. *See id.* at 1281–82. The ALJ's conclusion that the "locking" problem described by Dr. Forney was not equivalent to the "catching" problem described by McCawley was a reasonable resolution of an ambiguity in the record. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). The ALJ partially discounted McCawley's testimony regarding her bipolar disorder because (among other reasons) McCawley's reported symptoms were inconsistent with her work history and statements to treating psychiatrists. *See Smolen*, 80 F.3d at 1284–85. The ALJ also discounted McCawley's excess pain testimony because she failed to complain to her treating physicians of extreme pain or seek treatment for such pain. *See Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996)

3

(noting that claims of excess pain "properly may be refuted by evidence of claimant's behavior, such as . . . [the claimant's failure to] search for medical attention" for the alleged pain); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (stating that "an unexplained, or inadequately explained, failure to seek treatment" is the type of finding that can be "sufficient to discredit an allegation of disabling excess pain").  This conclusion is supported by the record, which shows that McCawley visited Dr. Forney a number of times during the relevant time period to receive treatment for hypothyroidism but did not complain of extreme pain or request pain medication.  Nor does McCawley claim she refrained from requesting pain medication because it was too expensive.  The ALJ similarly discredited McCawley's claims of serious side effects from her medications because she failed to complain to her treating psychiatrists of such side effects.  Finally, taken in context, the ALJ's statement that "[i]t appeared that the claimant's allegations of disabling pain are overstated due to her wish to get benefits" was not an improper consideration of McCawley's ability to pay for treatment in assessing her credibility, which is precluded by *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

Except for the ALJ's assessment of McCawley's ability to stand/walk and sit, as discussed above, the ALJ's assessment of McCawley's RFC was supported

by substantial evidence.  The ALJ gave adequate consideration to the effects of obesity and fatigue due to hypothyroidism.  Because the ALJ gave clear and convincing reasons for discrediting McCawley's testimony about excess pain and medication side effects, he did not need to consider those symptoms in assessing her RFC.  *See Bayliss*, 427 F.3d at 1217.  Finally, the ALJ's decision not to include mental limitations in McCawley's RFC was supported by Dr. Bach's expert opinion, the fact that none of McCawley's treating psychiatrists had "impose[d] restrictions upon her mental ability to work," and Dr. Finsaas's opinion that McCawley's limitations were mainly physical.[1]

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.[2]**

---

[1]  To the extent the ALJ erred at step 2 in concluding that McCawley's bipolar disorder was not "severe," that error was harmless because the ALJ considered the potential effects of bipolar disorder in determining McCawley's RFC.  *See Burch v. Barnhart*, 400 F.3d 676, 681–83 (9th Cir. 2005).

[2]  Each party shall bear its own costs on appeal.

*McCawley v. Astrue*, 10-35056

Fletcher, B., concurring in part and dissenting in part:

I concur in the majority's conclusion that the ALJ's determination that McCawley could "stand/walk no more than 2 hours" and "sit about 6 hours" in an 8-hour workday was not supported by substantial evidence, and that remand for clarification is warranted. I respectfully dissent, however, from the majority's conclusion that the ALJ did not err in discounting certain portions of McCawley's testimony regarding her pain.

An ALJ evaluating the credibility of a claimant's testimony regarding subjective pain must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

There is no dispute that McCawley received an operation to correct a bad break in her right leg, and that this operation involved the insertion of a metal plate and fourteen screws. Nor is there any dispute that McCawley's treating physician

1

advised that this hardware ought to be removed. McCawley testified that she has consistently suffered from a significant amount of pain and daily swelling since undergoing this operation. McCawley has presented objective medical evidence, therefore, of an underlying impairment that could reasonably be expected to produce the pain and other symptoms to which she testified.

Once a "claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). On this record, I must disagree with the majority's conclusion that the ALJ gave "clear and convincing" reasons for discounting McCawley's symptom testimony. **Mem. Disp. at 3.**

McCawley testified that she sensed that "my tendons and my muscles are catching" on the screws. She further testified that her pain limited her ability to complete normal day-to-day activities at home, such as cooking breakfast, cleaning, shopping, and driving. Although McCawley was prescribed a strong painkiller immediately following her surgery, her treating doctor retired and she has since been unable to refill this prescription. She does not have insurance, so

2

she has made do by taking large doses of Tylenol, up to 1800 milligrams a day.[1]

She also testified that she did not have the money to pursue physical therapy following the initial surgery and that she has not had the recommended follow-up operation to remove the hardware from her leg because she cannot afford that treatment given her current financial situation.

In light of McCawley's financial situation, the fact that she has not sought or received additional treatment for severe pain should not be held to undermine her testimony. *See Gamble v. Chater*, 68 F.3d 319, 321–22 (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. . . . It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." (citation omitted)).[2] The

---

[1] There are 500 mg of the pain reliever acetaminophen in one extra-strength Tylenol capsule.

[2] The majority asserts that, "taken in context, the ALJ's statement that '[i]t appeared that the claimant's allegations of disabling pain are overstated due to her wish to get benefits,' was not an improper consideration of McCawley's ability to pay for treatment in assessing her credibility." **Mem. Disp. at 4.** *Gamble*, the majority rightly notes, precludes ALJs from considering a claimant's inability to pay for treatment in making credibility determinations. The majority's reference to "the context" of this case, however, neither clarifies nor justifies its determination that the ALJ did not run afoul of *Gamble* here. To the contrary: the context of the ALJ's remarks, in particular his inappropriate commentary regarding McCawley's financial status, indicate that he disregarded *Gamble*'s admonitions. This outcome

3

majority errs in reaching the contrary conclusion that the ALJ correctly "discounted [McCawley's] excess pain testimony because she failed to complain to her treating physicians of extreme pain or seek treatment for such pain."[3] This, in effect, punishes McCawley for being too poor to seek treatment.

"Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective

---

"directly contravenes the primary purpose of the Social Security Act: 'to give financial assistance to disabled persons because they are without the ability to sustain themselves.'" *Gamble*, 68 F.3d at 322 (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (9th Cir. 1984)).

[3] Neither *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849 (9th Cir. 1996), nor *Fair v. Bowen*, 885 F.2d 597 (9th Cir. 1989), support the majority's contrary conclusion. Although *Chavez* held that claims of excess pain *may* be refuted by evidence of a claimant's behavior, such as the failure to seek further medical treatment, it does not hold that *all* claims of excess pain *must* be rejected under such circumstances. Rather, the ALJ is required to engage in a fact-intensive inquiry and examine the details of the case actually before him or her. *Chavez* is also factually distinguishable, since the claimant in that case presented medical evidence of a back injury, but did not present additional evidence of corrective surgery and testify to the pain resulting from that procedure.

Likewise, the majority's reliance on *Fair* is misplaced. There, the claimant's own treating physician testified before the ALJ that he had "not followed recommended exercise and physical therapy programs designed to reduce his weight and relieve his back pain." 885 F.2d at 600. Moreover, the court was careful to hold that "*unexplained*, or *inadequately explained*, failure to seek treatment or follow a prescribed course of treatment" was a legitimate basis for discrediting an allegation of disabling excess pain. *Id.* at 603 (emphases added). McCawley's inability to afford further treatment is neither unexplained or inadequately explained on the record before us.

4

symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  Instead, the ALJ must "provide specific, cogent reasons for the disbelief." *Id.* (quoting *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)).  The record contains no "specific, cogent reasons" for the ALJ's disbelief.  Accordingly, I would hold that McCawley's testimony was credible, and that her pain prevents her from regular gainful employment.