**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

CHA YANG,

          Plaintiff - Appellant,

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

          Defendant - Appellee.

No. 10-17590

D.C. No. 1:09-cv-01495-DLB

MEMORANDUM[*]

Appeal from the United States District Court
for the Eastern District of California
Dennis L. Beck, Magistrate Judge, Presiding

Submitted February 15, 2012[**]
San Francisco, California

Before: THOMAS, FISHER and IKUTA, Circuit Judges.

Cha Yang appeals the district court's affirmance of the denial of his

application for disability insurance benefits under Title II of the Social Security

_____

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Act.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand.

1.    **Res Judicata.**  The administrative law judge (ALJ) failed to cite Yang's changed circumstances and thus misapplied the res judicata principles set forth in *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).  In formulating Yang's residual functional capacity (RFC), however, the ALJ in fact weighed Yang's medical evidence.  Any error was therefore harmless.  *See Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (an error is harmless where it does not negate the validity of the ALJ's ultimate conclusion).

2.    **Analysis of the Evidence.**

   a.    **Medical Testimony.**  The ALJ gave specific and legitimate reasons for rejecting the opinions of Drs. Shaffer and Damania.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ explained that Dr. Shaffer's report was an outlier, contradicted by almost all other medical evidence, *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."), including that of Yang's treating physician, Dr. Chu, *see id.* § 404.1527(c)(2) ("Generally, we give more weight to opinions from . . . treating

2

sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s).").

The ALJ explained that Dr. Damania's findings were unsupported by his own clinical examination, *see id*. § 404.1527(c)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to that opinion)*,* and inconsistent with a record devoid of any treatment for physical impairments, *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (upholding rejection of a medical opinion where clinical notes and observations were contradictory). Additionally, the ALJ reasoned that Dr. Damania's findings were contradicted by the opinion of a state agency physician, Dr. Bonner. *See Magallanes v. Bowen*, 881 F.2d 747, 752-53 (9th Cir. 1989) (although a state agency physician's opinion, standing alone, cannot constitute substantial evidence, it can be substantial evidence when the ALJ points to other evidence as well).

By contrast, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Mouanoutoua's medical opinion, specifically his findings that Yang had post-traumatic stress disorder (PTSD) and would likely have problems with an eight-hour work day. The ALJ's primary reason for discounting Dr.

Mouanoutoua's entire medical opinion – a general belief that Yang was malingering or otherwise not credible – was flawed.

Although Dr. Chu had noted in his record to "R/O [rule out] malingering[,]" this notation is not a clear, affirmative diagnosis that Yang was actually malingering. Notably, Dr. Chu failed to follow up on his suspicions and none of Yang's other treating or examining doctors suggested that Yang might be malingering. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) .

The ALJ's other reasons for discounting Dr. Mouanoutoua's medical opinion were also flawed. First, the ALJ did not explain how Dr. Hirokawa's notation that Yang exhibited "poor and questionable effort during the mental status examination" was inconsistent with Dr. Mouanoutoua's determination that Yang's "stress level, excessive distress, and persistent body pain . . . would likely [make it] problem[atic for Yang to] perform[] 8-hour repetitive work." Second, Dr. Mouanoutoua's reported GAF score of 45 was not so different from Dr. Chu's GAF score of 60. Indeed the ALJ seemed to rely on both of these scores to discredit the GAF score of 29 assessed by Dr. Schaffer. Finally, the record reveals that Yang told Dr. Hirokawa he *stopped working* due to stress and difficulty concentrating, whereas he told Drs. De Molli and Mouanoutoua he *left Michigan* because of back and shoulder pain. The only other reason the ALJ cited was a

4

general belief that Yang was not credible. As explained below, this finding was also in error.

b. **Yang's Testimony.** Given the absence of any affirmative evidence of malingering, the ALJ was required to explain his credibility analysis. *See Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (an ALJ can reject a claimant's testimony only upon "(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"). The ALJ did not do so, again relying primarily on a flawed belief that Yang was malingering.

First, the ALJ's assertion that Yang was "only motivated in seeking disability" is not supported by substantial evidence in the record. At most, the evidence that Yang was motivated by a desire to obtain benefits came from several therapists and doctors who reported that financial problems served to "exacerbate," but did not constitute the whole of, Yang's problems. If a petitioner's desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant would ever be found credible. *Cf. Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (upholding ALJ's finding of malingering where petitioner purposefully refrained from engaging in various work activities and misrepresented when he first became disabled). Second, the ALJ's suggestion that

5

Yang's acknowledgment that he was "stable," combined with his desire to remain in treatment, was evidence that he was motivated only by a desire to obtain benefits is likewise insufficient. The very record the ALJ cited shows that Yang's caseworker thought Yang needed mental health services to maintain his level of stability in the community. Moreover, "[a] willingness to try to engage in rehabilitative activity and a release by one's doctor to engage in such an attempt is clearly not probative of a present ability to engage in such activity." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978). Although the ALJ provided other, potentially legitimate, reasons for discounting Yang's credibility, he did not "state which symptom testimony he found not credible with enough specificity to allow [us] to confirm that the testimony was rejected on permissible grounds and not arbitrarily." *Benton*, 331 F.3d at 1041.

        **c.**     **Third-Party Testimony.** The ALJ did not err in discounting the testimony of Yang's friend, Yee Vang. Vang's third party function report noted that Yang had limited physical and mental abilities, but lacked details about the extent of these limitations. Thus, the ALJ properly concluded Vang's report "lack[ed] quantification and [explanation of] how these conditions are affected" and afforded it "little weight." *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir.

6

2009) (to discount lay witness testimony, the ALJ must give reasons germane and specific to each witness).

### 3.   Conclusion.

Because there are insufficient findings as to whether Yang's testimony should be credited as true, and, given that, whether a proper adverse credibility finding could serve as a specific and legitimate reason for rejecting Dr. Mouanoutoua's medical opinion, we reverse the judgment of the district court and remand to the ALJ for further findings evaluating the credibility of Yang's complaints and Dr. Mouanoutoua's medical opinion.  *See Benecke v. Barnhart*, 379 F.3d 587, 593-94 (9th Cir. 2004) (remand for further administrative proceedings is appropriate if there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited); *accord Vasquez v. Astrue*, 572 F.3d 586, 600 (9th Cir. 2008) (Hawkins, J., concurring).

Costs of appeal are awarded to Yang.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

*Yang v. Astrue*, No. 10-17590
IKUTA, Circuit Judge, dissenting

Yang was admirably frank in letting many of his doctors and caregivers know that the only reason he was seeking mental health treatment was to strengthen his case to receive social security disability payments. Not surprisingly, the ALJ concluded that he was malingering and that his claims regarding the intensity of his symptoms were not credible. This conclusion was clearly supported by substantial evidence, that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). In holding otherwise, the majority not only casts aside our deferential standard of review, but also ignores the obvious.

The record is replete with evidence supporting the ALJ's determination that Yang was malingering and his claims were not credible. According to Dr. Sarah Morgan, a physician at the Fresno County mental health clinic Yang attended, Yang admitted that "the reason he came to [the mental health] program [was] to get more points for SSI because his lawyer told him so." In addition, Yang's treating psychiatrist, Dr. Wen Chu, indicated that he suspected Yang of malingering on at

1

least three different occasions over the course of several years. For example, in December 2006, after noting that Yang was "applying for SSI" and "wants [me] to write a letter," Dr. Chu concluded that Yang was "stable" and noted "R/O [rule out] malingering to get SSI." In November 2007, Dr. Chu noted that Yang "has not been [taking] his med for 7 [months]" and that he was "applying for SSI and said he does not know what to do if he will not get it." Dr. Chu again noted "R/O malingering to get SSI." A "rule-out" notation means there is good evidence that the patient meets the criteria for that diagnosis, and the doctor needs more information to rule it out. *See Hansen ex rel. J.H. v. Republic R-III Sch. Dist.*, 632 F.3d 1024, 1027 n.3 (8th Cir. 2011); *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008); *Johns v. Jarrard*, 927 F.2d 551, 555 n.1 (11th Cir. 1991). Finally, clinician Judye Johnson reported in May 2005 that although Yang "present[ed] himself alert and in a bright mood" and "agree[d] he is stable," he expressed a "desire . . . to stay in the program until he gets his SSI" because he feared discharge would negatively affect his application for disability benefits. Three months later, Johnson again reported that Yang "understands that he has met his goal of reducing his depression . . . and he meets [the] criteria for discharge" but that he "requested his case be left open because of his current struggle to get SSI approved." We have upheld the ALJ's finding of malingering based on much less

2

evidence than this. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) ("[T]he ALJ pointed to affirmative evidence of malingering, including that Berry reported that he wanted to do volunteer work but refrained for fear of impacting his disability benefits . . . .").

Although the ALJ was not required to do so based on his finding that Yang was malingering, the ALJ went on to provide additional "clear and convincing" reasons for determining that Yang was not credible regarding the intensity of his symptoms. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040–41 (9th Cir. 2003) (holding that the ALJ may reject the claimant's testimony "upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so"). As the ALJ noted, two doctors questioned whether Yang was making an earnest effort to participate and answer questions honestly during his consultative medical evaluations. Dr. Rustom Damania reported that Yang had normal motor skills, strength, and gait, and that there was "[n]o objective reason for postural limitations though [Yang] did not make a good effort for range of motion of the lumbar spine." He also noted "poor effort" with regard to grip strength and visual acuity. Dr. Greg Hirokawa likewise reported that Yang's "participation effort was poor or questionable" throughout his mental status evaluation and concluded that Yang's "symptoms of depression appear to be in the

3

mild range." We have held that a claimant's "fail[ure] to give maximum or consistent effort" during medical evaluations is "compelling" evidence that the claimant is not credible. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Rautio v. Bowen*, 862 F.2d 176, 179–80 (8th Cir. 1988). The evidence of Yang's efforts to counterfeit disabling symptoms was more than sufficient to meet the "clear and convincing" standard.

Relying on these well-supported findings, the ALJ gave "specific and legitimate reasons" for discounting Dr. Mouanoutoua's evaluation. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). We have held that where the ALJ determines that the claimant's description of his limitations is not entirely credible, the ALJ may discount a physician's opinion that is based on those less than credible statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). Here, Dr. Mouanoutoua's evaluation was based primarily on Yang's self-reporting, so the ALJ properly discounted the evaluation based on his finding that Yang was malingering and that his subjective complaints were not credible. Moreover, the ALJ gave several additional reasons for rejecting Dr. Mouanoutoua's opinion. For instance, the ALJ pointed out that Yang did not consistently participate in his mental health treatment and was nearly discharged

4

for multiple no-shows. In addition, the ALJ noted that Yang's treating physician, Dr. Chu, reported that Yang was "essentially normal" and gave him a GAF of 65, indicating mild symptoms. *See Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008). These reasons, too, were specific and legitimate. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that, in assessing a claimant's credibility, the ALJ may properly rely on "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)); *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1204–05 (9th Cir. 2008) (explaining that particular deference is owed to the opinions of treating physicians).

In short, there was well-documented evidence, including Yang's own admissions, supporting the ALJ's conclusion that Yang was malingering and exaggerating his symptoms. Because the ALJ's conclusion is supported by inferences reasonably drawn from the record, we must uphold it even if "the evidence is susceptible to more than one rational interpretation." *Tommasetti*, 533 F.3d at 1038. Instead of applying our "highly deferential standard of review," *Valentine*, 574 F.3d at 690, the majority searches the record to find other evidence that supports its own view of Yang's case. Because the majority improperly substitutes its own judgment for that of the ALJ, I respectfully dissent.

5