MEMORANDUM **
Cha Yang appeals the district court’s affirmance of the denial of his application for disability insurance benefits under Title II of the Social Security Act. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part and remand.
1. Res Judicata.
The administrative law judge (ALJ) failed to cite Yang’s changed circumstances and thus misapplied the res judicata principles set forth in Chavez v. Bowen, 844 F.2d 691, 698 (9th Cir.1988). In formulating Yang’s residual functional capacity (RFC), however, the ALJ in fact weighed Yang’s medical evidence. Any error was therefore harmless. See Batson v. Comm’r Soc. Sec., 859 F.3d 1190, 1197 (9th Cir.2004) (an error is harmless where it does not negate the validity of the ALJ’s ultimate conclusion).
2. Analysis of the Evidence.
a. Medical Testimony. The ALJ gave specific and legitimate reasons for rejecting the opinions of Drs. Shaffer and Damania. See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995).
The ALJ explained that Dr. Shaffer’s report was an outlier, contradicted by almost all other medical evidence, see 20 C.F.R. § 404.1527(c)(4) (“Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.”), including that of Yang’s treating physician, Dr. Chu, see id. § 404.1527(c)(2) (“Generally, we give more weight to opinions from ... treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant’s] medical impairment(s).”).
The ALJ explained that Dr. Damania’s findings were unsupported by his own clinical examination, see id. § 404.1527(c)(3) (the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight will be given to that *205 opinion), and inconsistent with a record devoid of any treatment for physical impairments, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.2005) (upholding rejection of a medical opinion where clinical notes and observations were contradictory). Additionally, the ALJ reasoned that Dr. Damania’s findings were contradicted by the opinion of a state agency physician, Dr. Bonner. See Magallanes v. Bowen, 881 F.2d 747, 752-53 (9th Cir.1989) (although a state agency physician’s opinion, standing alone, cannot constitute substantial evidence, it can be substantial evidence when the ALJ points to other evidence as well).
By contrast, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Mouanoutoua’s medical opinion, specifically his findings that Yang had post-traumatic stress disorder (PTSD) and would likely have problems with an eight-hour work day. The ALJ’s primary reason for discounting Dr. Mouanoutoua’s entire medical opinion — a general belief that Yang was malingering or otherwise not credible — was flawed.
Although Dr. Chu had noted in his record to “R/O [rule out] malingering[,]” this notation is not a clear, affirmative diagnosis that Yang was actually malingering. Notably, Dr. Chu failed to follow up on his suspicions and none of Yang’s other treating or examining doctors suggested that Yang might be malingering. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir.1995).
The ALJ’s other reasons for discounting Dr. Mouanoutoua’s medical opinion were also flawed. First, the ALJ did not explain how Dr. Hirokawa’s notation that Yang exhibited “poor and questionable effort during the mental status examination” was inconsistent with Dr. Mouanoutoua’s determination that Yang’s “stress level, excessive distress, and persistent body pain ... would likely [make it] problematic for Yang to] perform[ ] 8-hour repetitive work.” Second, Dr. Mouanoutoua’s reported GAF score of 45 was not so different from Dr. Chu’s GAF score of 60. Indeed the ALJ seemed to rely on both of these scores to discredit the GAF score of 29 assessed by Dr. Schaffer. Finally, the record reveals that Yang told Dr. Hiroka-wa he stopped working due to stress and difficulty concentrating, whereas he told Drs. De Molli and Mouanoutoua he left Michigan because of back and shoulder pain. The only other reason the ALJ cited was a general belief that Yang was not credible. As explained below, this finding was also in error.
b. Yang’s Testimony. Given the absence of any affirmative evidence of malingering, the ALJ was required to explain his credibility analysis. See Benton ex. el. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir.2003) (an ALJ can reject a claimant’s testimony only upon “(1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so”). The ALJ did not do so, again relying primarily on a flawed belief that Yang was malingering.
First, the ALJ’s assertion that Yang was “only motivated in seeking disability” is not supported by substantial evidence in the record. At most, the evidence that Yang was motivated by a desire to obtain benefits came from several therapists and doctors who reported that financial problems served to “exacerbate,” but did not constitute the whole of, Yang’s problems. If a petitioner’s desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant’s testimony, then no claimant would ever be found credible. Cf. Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir.2010) (upholding ALJ’s finding of malingering where petitioner purposefully refrained from engaging in various work activities and misrep *206 resented when he first became disabled). Second, the ALJ’s suggestion that Yang’s acknowledgment that he was “stable,” combined with his desire to remain in treatment, was evidence that he was motivated only by a desire to obtain benefits is likewise insufficient. The very record the ALJ cited shows that Yang’s caseworker thought Yang needed mental health services to maintain his level of stability in the community. Moreover, “[a] willingness to try to engage in rehabilitative activity and a release by one’s doctor to engage in such an attempt is clearly not probative of a present ability to engage in such activity.” Cox v. Califano, 587 F.2d 988, 991 (9th Cir.1978). Although the ALJ provided other, potentially legitimate, reasons for discounting Yang’s credibility, he did not “state which symptom testimony he found not credible with enough specificity to allow [us] to confirm that the testimony was rejected on permissible grounds and not arbitrarily.” Benton, 831 F.3d at 1041.
c. Third-Party Testimony. The ALJ did not err in discounting the testimony of Yang’s friend, Yee Vang. Vang’s third party function report noted that Yang had limited physical and mental abilities, but lacked details about the extent of these limitations. Thus, the ALJ properly concluded Vang’s report “lack[ed] quantification and [explanation of] how these conditions are affected” and afforded it “little weight.” See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir.2009) (to discount lay witness testimony, the ALJ must give reasons germane and specific to each witness).
3. Conclusion.
Because there are insufficient findings as to whether Yang’s testimony should be credited as true, and, given that, whether a proper adverse credibility finding could serve as a specific and legitimate reason for rejecting Dr. Mouanoutoua’s medical opinion, we reverse the judgment of the district court and remand to the ALJ for further findings evaluating the credibility of Yang’s complaints and Dr. Mouanoutoua’s medical opinion. See Benecke v. Barnhart, 379 F.3d 587, 593-94 (9th Cir.2004) (remand for further administrative proceedings is appropriate if there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited); accord Vasquez v. Astrue, 572 F.3d 586, 600 (9th Cir.2008) (Hawkins, J., concurring).
Costs of appeal are awarded to Yang.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.